IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.   CRIMINAL ACTION NO. 6:12-cr-00210

LLOYD B. CARR

MEMORANDUM OPINION AND ORDER

Pending before the court is the United States' Motion to Adjust Payment Plan Pursuant to 18 U.S.C. § 3664(k). [ECF No. 147]. For the following reasons, the Motion is **GRANTED**.

I.   Background

In May 2014, Mr. Carr was sentenced to 75 months of imprisonment followed by three years of supervised release after pleading guilty to aiding and abetting mail fraud in violation of 18 U.S.C. §§ 1341 and 1342. [ECF No. 61]. Mr. Carr was likewise ordered to pay $589,704.85 in restitution, payable immediately. *Id.* Because Mr. Carr was unable to pay his full restitution immediately, he was ordered to pay monthly installments of $290.00, beginning 30 days after his release from custody. [ECF No. 70]. Mr. Carr was released from prison on November 19, 2019, and thereafter began his three-year term of supervised release, which terminated on November 18, 2022. [ECF No. 156, at 2].

Following his release, Mr. Carr failed to make regular restitution payments and did not comply with this court's ordered payment plan. In March 2020, Mr. Carr was placed in the Treasury Offset Program, a program administered by the Bureau of Fiscal Services to reroute payments for the collection of delinquent federal debts. [ECF No. 147, at 2]. The United States Attorney's Office ("USAO") initiated formal garnishment proceedings against Mr. Carr's pension in October 2020, which resulted in monthly payments of $352.25 towards his restitution obligation. [ECF No. 109]. The USAO likewise filed a garnishment application against Mr. Carr's annuity benefits with MetLife Insurance Company in January 2021, resulting in monthly payments of $127.83. [ECF No. 132].

In September 2021, the United States Probation Office ("USPO") initiated an investigation into Mr. Carr's then-current financial situation, after the office received a report that Mr. Carr had opened 21 lines of credit, in violation of the terms of his supervised release. [ECF No. 147]. During that investigation, the USPO discovered that Mr. Carr had failed to report that he began receiving benefits from the Veteran's Administration following his release from prison in November 2019. *Id.* A further review of Mr. Carr's credit card applications revealed a claimed monthly income of over $7,000.00 and a reported annual income of $93,000.00. [ECF Nos. 148, 156]. Third-party records likewise indicate that Mr. Carr maintains multiple bank accounts, and his spending habits and subsequent credit card payments far exceed his monthly restitution amount.[1] Following the investigation, the USPO determined

---

[1] It is unclear how Mr. Carr is obtaining approximately $6,000.00 in additional monthly income beyond his veteran's benefits, annuity payments, and social security. The court is aware of Mr. Carr's history,

that Mr. Carr could pay at least $500.00 per month towards his restitution obligation without hindering his ability to pay necessary expenses for food, rent, and his new vehicle. [ECF No. 147, at 3].

On January 12, 2022, the United States filed the instant Motion to increase Mr. Carr's monthly restitution payments to $500.00. *Id.* This court ordered Mr. Carr to respond to the Motion by January 28, 2022. [ECF No. 149]. Mr. Carr then requested a 30-day extension to file a response, which this court granted. [ECF Nos. 150, 151]. However, Mr. Carr failed to file a response by February 28, 2022, as directed by this court. On March 1, 2022, Mr. Carr filed a Motion to Maintain Present Court Order Payment Plan of $290.00. [ECF Nos. 153, 154]. Despite his failure to comply with this court's order [ECF No. 151] directing him to file a response no later than February 28, 2022, I will construe Mr. Carr's motion [ECF No. 154] as a response in opposition to the instant motion. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (directing district courts to liberally construe pro se filings).

Finally, on June 14, 2023, the United States certified, pursuant to this court's order [ECF No. 196], that all victims owed restitution by Mr. Carr have been notified regarding the purported change in his financial circumstances. [ECF No. 198]. The Motion is now ripe for consideration.

---

which includes his receipt of illegitimate unemployment benefits from the state of Arizona in August 2020. [ECF No. 156, at 7]. Regardless, it is evident from his spending habits and credit line that Mr. Carr is in fact receiving additional income from an unknown source. In my analysis, I will consider Mr. Carr's spending habits, his acquisition of veteran's benefits, and his receipt of additional income, purportedly exceeding $7,000.00 per month.

## II.   Discussion

Under the Mandatory Victims Restitution Act ("MVRA"), a sentencing court must "order restitution to each [identified] victim in the full amount of each victim's losses" and "without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Upon determining the full restitution amount owed to each victim, the court must then specify the manner in which that restitution will be paid. *Id.* § 3664(f)(2). In doing so, the court must consider (A) the financial resources and other assets of the defendant . . . ; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant, including obligations to dependents." *Id.*

The MVRA likewise requires that a defendant "notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." *Id.* § 3664(k). Once the court determines that a material change has indeed occurred, the court is authorized to adjust the payment schedule "as the interests of justice require" and so long as the victims have been notified regarding the change in the defendant's financial circumstances. *Id.*; *see also Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003) (explaining that a district court can modify a restitution payment schedule when there is a "*bona fide* change in the defendant's financial condition"). A material change in economic circumstances under § 3664(k) requires an "objective comparison of a defendant's financial condition before and after a sentence is imposed." *United*

4

*States v. Caudle*, 710 F. App'x 124, 126 (4th Cir. 2018) (citing *United States v. Grant*, 235 F.3d 95, 100 (2d. Cir. 2000)).

Prior to his sentencing, the USPO prepared a Presentence Report ("PSR") outlining Mr. Carr's financial circumstances and assessing his ability to pay fines and restitution. [ECF No. 64]. According to the PSR, Mr. Carr's monthly income at the time of sentencing was $1,700.00 and his monthly expenses were $2,514.00, yielding a negative net monthly cash flow of $814.00. *Id.* at 29–30. The PSR likewise included a calculation of Mr. Carr's necessary monthly expenses, which the USPO subtracted from his income and found a net cash flow of $198.00 per month. [ECF No. 147, at 4]. Based on the PSR calculations, this court ordered that Mr. Carr pay $290.00 per month towards his restitution obligation. [ECF No. 70].

Mr. Carr met his monthly restitution obligation in September and October 2020. [ECF Nos. 104, 108]. However, he failed to make any restitution payments from November 2020 to January 2021. In February 2021, Mr. Carr began making monthly payments of only $127.83,[2] [ECF Nos. 135–46], despite his ongoing obligation to pay $290.00 per month, per this court's order, [ECF No. 70].

As revealed by the USPO's investigation in September 2021, Mr. Carr's monthly income has increased significantly since his sentencing. Mr. Carr now receives $1,960.45 per month from his pension, veteran's benefits, and social security. [ECF No. 147]. Moreover, when attempting to obtain additional lines of credit, Mr.

---

[2] Mr. Carr has seemingly conflated his restitution obligation and the garnishment of his MetLife annuity benefits. *See* [ECF No. 132]. Mr. Carr has always been required to pay $290.00 per month as part of his criminal conviction. At no point was that obligation reduced to only $127.83 per month.

Carr claimed a monthly income of more than $7,000.00. *Id.* While the court is unaware of the source of this income, it is evident from Mr. Carr's spending habits, including his $1,200.00 monthly credit card payments, that he has additional income beyond his social security, pension, and veteran's benefits. Mr. Carr has likewise accrued at least $24,325.00 in new debt since his release, which he is paying off monthly. [ECF No. 156, at 14].

There can be no dispute that Mr. Carr's financial circumstances have changed since sentencing, by way of his veteran's benefits and his apparent income from an unknown source. Simply put, if Mr. Carr has the resources to spend $1,200.00 on newly accrued debt and continue to pay his monthly expenses, he has the resources to satisfy *at least* the $290.00 restitution obligation that he has failed to make since October 2020. Because his financial circumstances have changed, this court may adjust the payment schedule, "as the interests of justice require." *Cani*, 331 F.3d at 1215.

Mr. Carr contends that his veteran's benefits, which he began accruing after sentencing, should not be included in the calculation of his monthly income subject to restitution. [ECF No. 154]. Specifically, Mr. Carr argues that because his veteran's benefits are not part of his "gross income" reportable to the IRS, his acquisition of those benefits should not be considered a material change in his financial circumstances. *Id.* Mr. Carr's argument is unpersuasive.

The United States may enforce a restitution order against all of a restitution debtor's "property or rights to property" notwithstanding any other federal law. 18

U.S.C. § 3613(a). With the exception of a narrow set of circumstances specifically enumerated in § 3613(a), a restitution order is broad-sweeping and reaches all property, including property otherwise constrained by federally mandated anti-alienation provisions. *See United States v. Novak*, 476 F.3d 1041, 1045 (9th Cir. 2007) (en banc) (holding that § 3613 trumps even the broad protection that ERISA provides for pension plans). Veteran's disability benefits, once paid to an individual, are subject to the United States' authority to collect restitution under 18 U.S.C. § 3613(a). *See Hughes v. IRS*, 62 F. Supp. 2d 796, 800 (E.D.N.Y. 1999) (citing 26 U.S.C. § 6334(a)(10)) (protecting only amounts payable to an individual, and not those already dispersed). Accordingly, Mr. Carr's veteran's benefits are properly included in the calculation of his income, subject to restitution.

Mr. Carr's financial circumstances have improved, as evidenced by his acquisition of veteran's benefits and his spending habits, including his ability to pay $1,200.00 per month on his 21 lines of credit. Justice requires modifying Mr. Carr's payment schedule in order to refocus his priorities on satisfying his outstanding restitution obligation. Currently, Mr. Carr has sufficient income, passive and otherwise, to support a $500.00 monthly restitution payment.

### III. Conclusion

For these reasons, the United States' motion [ECF No. 147] is **GRANTED**. The defendant is hereby **ORDERED** to pay any remaining restitution balance in monthly installments of $500.00. The defendant shall make the payments to the Clerk, United States District Court, P.O. Box 2546, Charleston, WV 25329.

7

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant, all counsel of record, the United States Probation Office, and the United States Marshal. The court further DIRECTS the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: June 21, 2023

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE